**Marietta P. WIESZCZAK**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**Civ. No. 13780.**

United States District Court,
D. Connecticut.

Oct. 21, 1971.

Robert J. Pizzella, Pizzella, Pizzella & Tulisano, Newington, Conn., for plaintiff.

B. Blair Crawford, Hartford, Conn., Asst. U. S. Atty., Stewart H. Jones, Greenwich, Conn., for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CLARIE, District Judge.

The defendant has moved for summary judgment pursuant to Rule 56, Fed. R.Civ.P. This is an action under § 205(g) of the Social Security Act, as amended (42 U.S.C.A. § 405 [g]), to test the correctness of the "final decision of the Secretary of Health, Education and Welfare" denying disability payments to the plaintiff. All available administrative remedies have been exhausted. This Court affirms the decision of the Secretary and finds the Examiner's conclusions to be supported by substantial evidence.

In determining the issues raised, this Court is bound by the so-called "substantial evidence" rule. (42 U.S.C.A. § 405 [g]). Stevenson v. Flemming, 200 F.Supp. 705 (S.D.N.Y.1960), aff'd 297 F.2d 811 (2d Cir. 1961). Pursuant to

that standard this Court has reviewed the certified copy of the record transcript on which the Secretary's decision was based.

The claimant was born on May 3, 1939, and originally had filed her application for disability benefits on September 1, 1967 (Tr. 87). Her first application was denied on November 24, 1967 (Tr. 35), because she could not meet the insured status requirement of 20 quarters of coverage in the 40 quarter period ending with the quarter of disability then applicable. (Tr. 91, 106).

However, § 105(a), Public Law 90–248 enacted on January 2, 1968, amended the Act to provide that individuals who become disabled prior to the attainment of age 31, could meet the insured status requirements, if not less than one-half (and not less than 6) quarters during the period beginning with the quarter after the individual attained age 21 and ending with the quarter of disability were quarters of coverage. Section 105(c) of said Public Law 90–248 provided that the amendment was applicable only to applications filed on or after January 1968, therefore, she reapplied on February 19, 1968, in order to avail herself of this statutory change in the insured status requirement. It is the latter application which is now before this Court for review. She represented that she had been unable to work because of multiple sclerosis, since March 10, 1962.

The petitioner contends that the Hearings Examiner erred in not crediting her with at least two additional calendar quarters in the computation of her coverage eligibility namely, the third and fourth quarters of 1960. She represents that the company by whom she was employed is now defunct and failed to withhold and report social security taxes on her earnings for those two quarters. She also claims coverage for the period from October 10, 1960 to March 10, 1962, during which she was employed by the American Radio Relay League, a non-profit association, which had elected not to be covered by the Social Security System.

■ The petitioner has the burden of proving that the onset of her disabling condition had reached proportions, where she was unable to continue in substantial gainful activity, at a time when she was insured for disability under the Act. The Secretary found that December 31, 1961, was the terminal date for such social security disability insurance coverage. The constitutional issue raised by the petitioner asserts that the law is discriminatory as applied to her, because it permits the exclusion of non-profit associations from being subject to the Act solely by their own election; this issue is a question of law.

It is not necessary for the Court to review and recapitulate in detail the factual matters, which were testified to and submitted on exhibits at the administrative hearing; rather the Court will summarize its findings. The record discloses that substantial evidence did exist in the hearing record to support the Examiner's factual findings and conclusions. The plaintiff's earnings requirements under the law were last met on December 31, 1961. No persuasive evidence was produced by the plaintiff to warrant a conclusion that her present physical affliction and resulting disability did exist at or prior to that date. The plaintiff continued to earn monthly wages in excess of the amount deemed to demonstrate her ability to engage in substantial gainful activity, after the expiration of her insured status. The termination of her employment was allegedly related to the automobile accident of March 2, 1962, more than two months after the expiration of her insured status.

■ Petitioner's claim for a six-month extension of the insurance coverage period, for the two additional calendar quarters commencing with July 1, 1960 through December 31, 1960, arising out of her claimed employment at New Britain Motor Corporation has not been substantiated. (Tr. 106–113). Further-

more, her federal income tax return for that calendar year (Tr. 8) factually supports and confirms the actual amount of wages reported in the social security records. The Examiner chose to accept the reliability and believability of the objective records on this issue, as against the vacillating oral and conflicting testimony of the plaintiff's witnesses. Furthermore, the Social Security Act specifically provides in 42 U.S.C.A. § 405(c) (4) (B):

> "(T)he absence of an entry in the Secretary's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence for the purposes of this subchapter that no such alleged wages were paid to such individual in such period."

Thus under 42 U.S.C.A. § 405(c) (1) (B), if the time limitation of three years, three months, and fifteen days shall expire following the close of the year during which such wages were allegedly paid, it shall be presumptive evidence that no such alleged wages were paid to such individual in such period.

■ While the plaintiff claims disability since March 10, 1962, as a result of multiple sclerosis related to an automobile accident (Tr. 96), the medical records support the Examiner's findings that the multiple sclerosis symptoms of the claimant were not identified as such until October 1964. (Tr. 15, 140). Neither the September 22, 1961 automobile accident nor the effects of the accident of March 2, 1962, produced the degree of disability required by law,[1] during the period within which the plaintiff qualified for a fully insured status. (Tr. 9). Dr. Orfitelli's report of September 11, 1962, confirms the fact that she had essentially recovered from all the injuries she had sustained in the September 21, 1961 accident. (Tr. 148–150).

While the plaintiff may have established that she had at some time, well after the expiration of her insured status become seriously disabled as the result of multiple sclerosis, her continued employment beyond the expiration of her insured status, her other activities, during the years immediately following the expiration of her insured status and the medical evidence, all clearly established that at the time her insured status expired, she was not disabled within the meaning of the Act. Hanna v. Gardner, 352 F.2d 70 (5th Cir. 1965); Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965).

■ The plaintiff also alleges that she should have been credited with additional quarters of coverage for her employment at the American Radio Relay League, from October 10, 1960 to March 10, 1962. She argues that the statutory exemption to this non-profit organization under § 210(a) (8) (B) of the Act, which had not been shown to have been waived, has denied her equal protection under the law pursuant to the fifth and fourteenth amendments to the federal constitution. Her claim is that other clerk-typists doing the same type of work are in "covered employment" and to allow a non-profit association to be excluded from compliance with the Act, without the employee's consent or choice denies her equal protection. However, the Supreme Court has held otherwise and reserved this discretion to the Congress.

> "This is not to say, however, that Congress may exercise its power to modify the statutory scheme free of all constitutional restraint. The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause . . . (I)t is not within our authority to de-

---

1. 42 U.S.C.A. § 416(i) (1) and § 423(d) (1), (§ 223(d) (1)) defines the meaning of the term "disability:"

   "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

termine whether the Congressional judgment expressed in that section is found or equitable, or whether it comports well or ill with the purposes of the Act. 'Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts . . . .' (T)he Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

The Supreme Court has already established that the tax under Title II, of the Social Security Act, is not invalid as a result of statutory exemptions. *See,* Helvering v. Davis, 301 U.S. 619, 646, 57 S.Ct. 904, 81 L.Ed. 1307 (1936).

"It is only the 'invidious discrimination' or the classification which is 'patently arbitrary (and) utterly lacking in rational justification' which is barred by either the 'due process' or 'equal protection' clauses. . . .

. . . . . .

"(T)he variation in amounts of retirement benefits based upon differences in the attributes of men and women is constitutionally valid." Gruenwald v. Gardner, 390 F.2d 591, 592–593 (2d Cir. 1968).

The plaintiff worked for this tax exempt non-profit association from October 10, 1960 to March 10, 1962. During this period no social security tax withholdings were deducted from her payroll check. She elected to continue to work there, with full knowledge that social security coverage was not being provided. Congress has the discretion to place charitable organizations in a different category for purposes of social security tax coverage than that which has been established for non-charitable organizations; *See,* I.R.S. Code § 501(c). Such a distinction cannot be said to be lacking in rational purpose. It is not discrim-

inatory so as to be in violation of the federal constitution.

The Court adopts the findings and decision of the Hearings Examiner as affirmed by the Secretary of Health, Education and Welfare. Said determinations were supported by substantial evidence as required under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). Newman v. Celebrezze, 310 F. 2d 780 (2d Cir. 1962); Dondero v. Celebrezze, 312 F.2d 677 (2d Cir. 1963).

The defendant's motion for summary judgment is granted. So ordered.